E-FILED
Wednesday, 23 May, 2007  04:48:49 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| LISA M. SCHWARTZKOPF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-4051 |
| | ) | |
| THE BOARD OF EDUCATION FOR | ) | |
| SHERRARD COMMUNITY UNIT | ) | |
| SCHOOL DISTRICT #200, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

This case is before the Court on Defendant's Motion for Summary Judgment [#23]. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

**BACKGROUND**

Plaintiff Lisa Schwartzkopf ("Schwartzkopf") was employed by the Defendant, the Board of Education for Sherrard Community Unit School District #200 ("Board" or "School District"), for four school year terms, beginning with the 2000-2001 school year and concluding with the 2003-2004 school year. During the relevant time period, Schwartzkopf was a special education instructor for students in the 5th and 6th grades at Matherville Intermediate School. She served as a resource learning teacher, a primary instructional teacher in Math and English for students in the special education program, and a case manager for a certain portion of the special education students. As a case manager, Schwartzkopf was responsible for maintaining, updating and implementing her assigned students' Individualized Educational Programs ("IEPs") in accordance with the federal Individuals with Disability in Education Act ("IDEA"), ensuring that

the School District was in compliance with IDEA and related federal and state statutes.

During her employment with the School District, Schwartzkopf was a "probationary teacher." Under Illinois law, individuals working for a public school district in a full time position requiring certification (as Schwartzkopf was) are employed subject to a four-year probationary period, during which the employment may be terminated by written notice from the Board of Education, given at least forty-five days before the end of the current school year, that their employment will not be renewed. *See* 105 ILCS 5/24-11. The Notice of Dismissal of a fourth year probationary teach must specify reason(s) for the Board of Education's decision. *Id*. A teacher employed beyond the fourth probationary year becomes entitled to a contractual continued service or "tenure," with specific seniority and merit-based protections against dismissal, layoff, or removal. *Id*. at 5/24-12.

At all relevant times, Robert Gillum served as the Superintendent of Schools for the Sherrard School District. Gillum reports directly to the Defendant Board of Education and is the District's chief administrative officer. The Superintendent is assisted by a cabinet of administrators who meet two times a year to review the performance of each probationary teacher in the District. The cabinet includes the Principals for each school building, the District's Director of Curriculum, and the Director of Educational Services. The Director of Educational Services is assisted by a Director of Special Education.

Katherine Bowman served as the Director of Special Education during Schwartzkopf's first academic year of employment with the District, 2000-2001. For the remaining three years of Schwartzkopf's employment, Kim Hoffman was the Director of Special Education. Hoffman also served as the District's school psychologist for the '00-'01 through '04-'05 academic years.

The position of Principal of Matherville Intermediate School was filled by several individuals during the span of Schwartzkopf's employment there. Melissa Clark was the Principal during Schwartzkopf's first year. At some point during the '01-'02 school year, Clark resigned, and Alan Boucher, the District's Director of Curriculum, took over as interim Principal. Charles Driscoll was Principal during the last half of Schwartzkopf's employment – the '02-'03 and '03-'04 school years. However, at some point during the '03-'04 year, Driscoll resigned at Superintendent Gillum's prompting, with the resignation becoming effective at the end of the '03-'04 school year.

During the '02-'03 school year, Gillum had received an increasing number of complaints regarding operations at Matherville from parents, teachers, and other administrators such as Special Education Director Hoffman. Because of these concerns, Gillum met with Driscoll weekly, beginning in the '03-'04 school year, to review issues at the school and to mentor Driscoll to "recognize and respond appropriately to problems with student discipline, special education compliance, and staff evaluation and discipline." Aff. of R.Gillum, Def.'s Ex., at ¶ 4. In November 2003, after these efforts proved unsuccessful, in Gillum's view, Gillum informed Driscoll that it was unlikely that he would be recommended for continued employment. Driscoll's resignation was not published or generally known until its approval by the Board in April 2004, and Driscoll continued to hold the position as Principal through May 2004. Because he had already resigned, however, his communication with Superintendent Gillum had deteriorated since November 2003.

Around the time of this decline in relations between Gillum and Driscoll, Gillum directed Special Education Director Hoffman to give extra attention to the special education instruction at

Matherville and to report any problems to him, as Gillum felt that Driscoll had become ineffectual in addressing those issues. Hoffman, who had previously reported problems regarding Schwartzkopf's performance to Driscoll and the Administrative Cabinet, reported to Gillum a number of issues with Schwartzkopf's performance of her responsibilities as a special education teacher. Hoffman reported the following performance issues: Schwartzkopf regularly arrived late for IEP meetings; she failed to timely schedule the annual IEP meetings to allow for compliance with the IDEA; twenty of the 47 IEPs Schwartzkopf had handled as case manager were untimely; and Schwartzkopf had simply failed to complete the required three-year reviews on two different students. Hoffman also states that in '02-'03 and '03-'04, she received several parental complaints that Schwartzkopf had not followed through with portions of her students' IEPs, even after initial complaints had been made. At other points during Schwarzkopf's employment, Gillum had also received negative comments regarding Schwarzkopf's performance from Alan Boucher (concerns that Schwarzkopf was misusing prep time ), substitute teacher Heather Larkins (poor lessons plans left behind for substitute teacher) and Special Education Director Polly Dahlstrom (general poor performance during first semester of teaching).

During her employment with the District, Schwarzkopf took two maternity leaves. The first was from September - November 2002; the second was from August - September 2003. She exhausted annually in each school year the 13 sick leave days and two personal days available to her, and had additional "dock days" in which her absences were unpaid because she had exhausted her benefit time. In a February 2004 self evaluation, Schwarzkopf acknowledged, "I don't always get things done as soon as I had planned, which ends up pushing everything else

back and it just seems to have a dominoe [sic] effect." With respect to the 20 of 47 annual IEP reviews that she failed to timely complete, none were to be done during the periods she was on maternity leave, and her failure to complete them was unrelated to absence on maternity leave. Schwarzkopf alleges that at some point in January 2004, "either for himself or on behalf of the district," Driscoll asked her whether she intended to have more children. Driscoll told her that she would be "doing fine" if she stopped getting pregnant. Pl.'s Resp., at 7.

As was typical procedure, Gillum and the administrative cabinet met twice during the '03-'04 school year to review every probationary teacher. As part of these meetings, Gillum made notes, which he maintained himself on his computer, rather than through any staff. With respect to Schwartzkopf's performance issues, Gillum's notes, made part of the record, reflect the following:

* student regression of skills identified in IEP (goal progression)

* Work ethic (late to meetings, paper work, compliance, etc.) (IEP development, record keeping, progress reports)

* On paper lesson plans are not of high quality (omissions of plans entirely at times)

* Non-compliance to suggestive strategies for teaching (dealing with specific child)

* student head count reporting has been neglected and financial ramifications for district exists

* many of these work ethic and attendance issues are impacting our students in a negative way

* compliance issues continue to be routine

Gillum also noted a team decision to offer Schwartzkopf an opportunity to resign rather than be officially dismissed.

The Board met on February 17, 2004, and Gillum informed Board members that he anticipated the non-renewal of several probationary teachers, including Schwartzkopf, absent resignations from those teachers. Gillum directed the responsible principals to meet with each of the teachers to offer them an opportunity to resign before the March 17 Board meeting or action would be taken on his non-renewal recommendations at that meeting. Gillum testified that when he requested Driscoll meet with Schwarzkopf, Driscoll refused, stating that he would not do to Schwartzkopf what Gillum had already done to him. Driscoll did not endorse the decision to terminate Schwarzkopf's employment. Gillum therefore met with Schwarzkopf without Driscoll and went over the issues he had previously developed from oral reports from Kim Hoffman and the administrator's cabinet, and informed Schwartzkopf that he would be recommending that her employment not be renewed. Schwartzkopf testified that Gillum also stated she had excessive absences. Of the issues raised, Schwarzkopf challenged those concerning her lesson plans and her attendance, claiming that her absences were all necessary due to personal or family illness.

None of the performance deficiencies mentioned above were ever listed in any of Schwartzkopf's written performance evaluations, and Hoffman did not document Schwartzkopf's shortcomings that she reported to Gillum. Schwartzkopf maintains that Gillum's reasons for recommending her dismissal were pretextual because they had not been discussed with her before the March 9 meeting, she was never disciplined or reprimanded for the conduct before March 9, and she does not accept that they were "true." With respect to the "student head count " reporting issue that Gillum mentioned, Schwartzkopf asserts that she gave her report to a first year teacher to turn in for her, and that when she was contacted because the report had not been received, Schwartzkopf immediately gave over the information necessary to complete the child count

report.

Schwartzkopf's teaching was formally evaluated twice per year by the acting principal. While it is not entirely clear from the record, it appears that these written evaluations were generated from the teacher's self-evaluation, and the principal's observation of the one of the teacher's class periods, as well as the principal's general observations regarding the teacher. Those of Schwartzkopf's formal evaluations which were made part of the record address her classroom teaching and professional demeanor, but do not address her performance with respect to the "case manager" aspects of her position, such as IEP management. In the formal evaluations which were made part of the record, Schwartzkopf's received a middle "satisfactory" rating, between unsatisfactory and excellent. Schwartzkopf never received an unsatisfactory formal performance evaluation, and the reasons she was provided for her dismissal were never listed in any of her written performance evaluations. The Board argues that while Driscoll never gave Schwartzkopf an unsatisfactory formal performance evaluation, the import of this is diminished by the fact that Driscoll himself was forced to resign because of his own inadequate performance. Moreover, the Board was informed that Driscoll did not share Gillum's concerns with Schwartzkopf's performance.

At the March 17, 2004, Board meeting, the Board unanimously adopted the resolution to issue Schwartzkopf the Notice and Statement of Dismissal. The Notice provides the following reasons for dismissal:

> (1) Your commitment to the profession and your degree of organization has not met District standards.
>
> (2) You have not submitted or prepared IEPs, child count reports, and lesson plans in a timely fashion and have missed annual review deadlines.

Schwartzkopf did not attend the Board meeting and did not discuss her employment or termination with any Board member.

Of the eight teachers whom Gillum recommended and the Board granted tenure at the March 17, 2004, Board meeting, three had taken one or more maternity leaves during their probationary employment period, while the other three females and two males had not. Of the twenty female probationary teachers who had taken maternity leaves during Schwartzkopf's period of employment – the '00-'01 school year through the '03-'04 school year – eighteen were approved by the Board for tenure on Gillum's recommendation, while only Schwartzkopf and one other employee were terminated. Both of the other special education teachers at Matherville during the '03-'04 school year, fourth year teacher Kelly Vroman and first year teacher Susan Scavozzo, also took maternity leaves during their probationary period of employment. Scavozzo was renewed for a second probationary year and Vroman was renewed and granted tenure at that March 17 Board meeting. Director of Special Education Kim Hoffman took two maternity leaves during her four-year probationary period, prior to being granted tenure during the '04-'05 school year.

Schwartzkopf filed a Charge with the Equal Employment Opportunity Commission on August 10, 2004, based upon allegations of sex discrimination. The EEOC issued a dismissal and Notice of Suit Rights on March 28, 2005. Schwartzkopf filed this action on June 13, 2005, alleging that the Board's decision to terminate her employment was "based upon her sex, specifically, the defendants did not want to retain a teach that was going to take several more maternity leaves." Compl., at ¶ 16. The District has now moved for Summary Judgment, arguing that it is entitled to Judgment as a matter of law. The Motion is fully briefed, and this Order

follows.

## DISCUSSION

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 447 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). Finally, "[w]here a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

Title VII prohibits employers from discriminating "against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2404 (1986). The phrase "because of sex" has been defined by the Pregnancy Discrimination Act, through which Congress amended Title VII in 1978, to mean "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

Under Title VII, the plaintiff is required to establish that she has been the victim of intentional discrimination. *Mojica v. Gannett Co., Inc.*, 7 F.3d 552, 561 (7th Cir. 1993). The plaintiff may present direct evidence of discrimination, which "essentially requires and admission by the decision-maker that his actions were based on prohibited animus." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 615 (7th Cir. 2000). The employee may alternatively rely on indirect evidence using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), burden-shifting method of proof.

Under this burden-shifting analysis, the plaintiff must establish a prima facie case by demonstrating that: (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees more favorably. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 204 (7th Cir. 1996) (citing *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994)); *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994).

If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating her

employment. *Hughes*, 20 F.3d at 746; *Lenoir*, 13 F.3d at 1133. She may challenge the defendant's explanation by showing that the stated reasons for her termination are a pretext for sex discrimination. *Id*.

Here, Schwartzkopf has indicated that she proceeds only under the *McDonnell-Douglas* indirect method of proof. See Pl.'s Resp., at 8. While it does not appear disputed that Schwartzkopf is a member of a protected class and that she suffered an adverse employment action, the Board argues that her claim cannot proceed for several reasons.

### I. Schwartzkopf's prima facie case

The Board first argues that Schwartzkopf has failed to establish that any similarly-situated non-class members received more favorable treatment. "In determining whether two employees are similarly situated, a court must look at all relevant factors, the number of which depends on the context of the case." *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000). In a case such as this, where the plaintiff was disciplined or terminated for purported performance issues, the plaintiff must show that he is similarly situated to the other employee "with respect to performance, qualifications, and conduct." *Id.* This *normally* entails a showing that the two employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 404-05 (7th Cir. 2007) (citing *Radue*, 219 F.3d at 617–18). However, the Seventh Circuit has recently confirmed that the "similarly situated inquiry" is flexible and circumstance-driven, and that "an employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Humphries*, 474 F.3d at 405.

In this case, the Board does not object that Schwartzkopf's chosen comparator does not satisfy the "similarly-situated" standards set forth above. Instead, the Board argues that Schwartzkopf has not even attempted to meet this fourth element of her prima facie case. In addition, the Board offers evidence that it regularly granted tenure to employees who took one or more maternity leaves during their probation and also terminated many employees, male and female, who were not fulfilling their job expectations, even though none were ever pregnant. In response, Schwartzkopf does not refute the Board's allegation, but instead argues, without any supporting authority, that she should be relieved of establishing this fourth element of her prima facie case. Schwartzkopf's response on this point, in its entirety, is as follows:

> As to the fourth element it is somewhat true that the plaintiff has not established that non-class members received more favorable treatment. However, the fact of the matter is that there were no other employees that were in the same class as the plaintiff, which was a female employee who had taken two extended maternity leaves in three years and had verbalized her express intention to have more children. The fact that other female employees may have taken maternity leaves and still received tenure is inconsequential because the defendant has failed to establish that any of these female employees referred to by the defendant were asked if they intended to have more children and/or expressed her intent to have more children.

This response entirely misses the point. Most significantly, Schwartzkopf concedes the Board's position that she has offered no evidence of any similarly situated employees who were treated more favorably. She argues that her protected class is in fact extremely narrow and suggests that this excuses her from making any showing under this fourth element of her prima facie case. Even if the Court were to accept that Schwartzkopf's protected class is as narrow as she describes it, this fact should only make it *easier* for her to locate a comparator who lies outside of it, not harder. Finally, Schwartzkopf seemingly forgets that the ball is in *her* court at this stage of the *McDonnell-Douglas* back-and-forth. The Board's summary judgment briefing

may have addressed how other District employees, both similar and dissimilar with respect to maternity leaves and performance issues, were treated throughout the tenure process. However, it is the plaintiff's burden alone to put forward evidence to make out a prima facie case, and whatever the defendant may have "failed to establish" at this stage is not relevant. The Court simply will not parse through the record to locate a similarly situated employee outside of Schwartzkopf's protected class who received more favorable treatment from which a trier of fact might infer discrimination, if such an employee even exists. Because Schwartzkopf has failed to identify such an employee and create a triable issue of fact, her prima facie case must fail,[1] and the Board is entitled to Summary Judgment.

## II. Pretext

The Board also argues that Schwartzkopf cannot establish that the Board's stated reasons for the non-renewal of her contract – multiple performance deficiencies – are a pretext for unlawful discrimination. Because Schwartzkopf has failed to establish a prima facie case of discrimination, it is unnecessary to reach the issue of pretext. Nevertheless, the Court will briefly address this consideration.

The Board has articulated several non-discriminatory reasons for declining to renew Schwartzkopf's contract, including that she sometimes failed to timely schedule her students' IEP meetings, that she sometimes failed to complete IEP reviews, that she failed to complete a behavior management plan for a student, that she was tardy to IEP meetings, and that her lesson

---

[1] The Board also argues that Schwartzkopf failed to establish the second element of her prima facie case – that she was meeting the Board's legitimate performance expectations. However, because the Court has already found that Schwartzkopf's prima facie case must fail, it need not address this issue.

plans were of poor quality.

Because such non-discriminatory reasons have been proffered, the burden of going forward shifts to Schwartzkopf to establish that each of the Board's reasons is pretextual. *Burks v. Wisconsin Dept. of Transportation*, 464 F.3d 744, 754 (7th Cir. 2006). Pretext requires more than showing that the decision was "mistaken, ill considered or foolish" and so long as the employer "honestly believes those reasons, pretext has not been shown." *Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir. 2005). "Pretext 'means a dishonest explanation, a lie rather than an oddity or an error.'" *Id.* (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000)).

Here, Schwartzkopf argues that the "global picture" of the case establishes pretext. Pl.'s Resp., at 9. Schwartzkopf makes much of the fact that her written performance evaluations were satisfactory and that there is no written documentation of any of her alleged performance deficiencies that were reported to Gillum by Hoffman and others. However, it is undisputed that it was not customary or ordinary procedure throughout the School District to place parent complaints or other informal assessments in writing.

Schwartzkopf also relies on Driscoll's affidavit, which opines that Schwartzkopf was fired because of her absences, which were legitimate and related to her pregnancy, and states that, contrary to the testimony of Gillum and Hoffman, he was not present at the March 9 meeting during which her performance deficiencies were discussed and she was offered the opportunity to resign. But, Driscoll's opinion is of limited relevance under the circumstances. While Driscoll may have been one of Schwartzkopf's supervisors during her period of employment, Gillum and the Board were the decision-makers in this case, and it is undisputed that Gillum recommended

that Driscoll's contract not be renewed because Gillum had lost confidence in Driscoll's ability to supervise staff, including Schwartzkopf. Moreover, the Court is unconvinced that a dispute in testimony regarding whether Driscoll did or did not attend the March 9 meeting is so suspicious as to suggest improper motive and pretext in this case.

Finally, Schwartzkopf argues that Driscoll's telling her that she would be "doing fine" if she stopped getting pregnant and Gillum's referencing her absenteeism at the March 9 meeting suggest that all of the other given reasons for her dismissal are pretextual. With respect to Driscoll's comment about Schwartzkopf's future pregnancy plans, there is no indication in the record that the decision-makers in this case, Gillum and the Board members, knew that Driscoll even made an inquiry into Schwartzkopf's future pregnancy plans. It is well-settled that "[t]he fact that someone who is not involved in the employment decision of which the plaintiff complains expressed discriminatory feelings is not evidence that the decision had a discriminatory motivation." *Hunt v. City of Markham*, 219 F.3d 649, 652-53 (7th Cir. 2000). Furthermore, even if Gillum did mention absenteeism among the issues leading to Schwartzkopf's termination, "the Pregnancy Discrimination Act does not protect a pregnant employee from being discharged for being absent from work even if her absence is due to pregnancy or to complications of pregnancy, unless the absences of nonpregnant employees are overlooked." *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 583 (7th Cir. 2000).

Even viewing the "global picture" of this case in the light most favorable to the plaintiff, the Court cannot find that the above pieces of evidence create a triable issue of fact regarding the Board's stated non-discriminatory reasons for Schwartzkopf's dismissal. Because there is insufficient evidence to suggest that the Board was improperly motivated and its stated reasons

were "a lie," Schwartzkopf has not shown pretext, and the Board is also entitled to Summary Judgment on this issue.

## CONCLUSION

For the reasons set forth above, the Court finds that Board's Motion for Summary Judgment [#23] is GRANTED.  This matter is now TERMINATED.

ENTERED this 23rd day of May, 2007.

s/Michael M. Mihm
Michael M. Mihm
United States District Judge
